# Exhibit A

Neutral
As of: April 14, 2025 6:27 PM Z

# *Kelsey v. Twp. of E. Hanover*

Superior Court of New Jersey, Appellate Division

January 11, 2021, Submitted; April 21, 2021, Decided

DOCKET NO. A-4859-18

**Reporter**

2021 N.J. Super. Unpub. LEXIS 679 *; 2021 WL 1557361

MICHAEL J. KELSEY, Plaintiff-Appellant, v. TOWNSHIP OF EAST HANOVER, NJ, Defendant-Respondent.

**Notice:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION.

PLEASE CONSULT NEW JERSEY *RULE 1:36-3* FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History: [*1]** On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0564-19.

*Kelsey v. Twp. of E. Hanover, 2019 N.J. Super. Unpub. LEXIS 7243 (Law Div., May 31, 2019)*

## Core Terms

notice, tort claim, reconsideration motion, late notice, reconsideration, ninety-day, extraordinary circumstances, disability, employees

**Counsel:** Michael J. Kelsey, appellant, Pro se.

Durkin and Durkin, LLC, attorneys for respondent (Gregory Francis Kotchick, of counsel and on the brief).

**Judges:** Before Judges Mayer and Susswein.

## Opinion

PER CURIAM

Plaintiff, Michael J. Kelsey, appeals from an April 15, 2019 order denying his motion to file a late tort claim against defendant, Township of East Hanover (Township). He also appeals from a May 31, 2019 order denying his motion for reconsideration. After reviewing the record in light of the applicable legal principles, we affirm substantially for the reasons set forth in the written decision rendered by Judge William J. McGovern, III., denying plaintiff's initial motion and the judge's oral decision denying plaintiff's motion for reconsideration.

This appeal arises from plaintiff's claim that as a result of a snowstorm on March 7-8, 2018, trees located on land owned by the Township fell and damaged plaintiff's adjacent property about one week later, around March 12 or 13, 2018. Plaintiff contends that he and his assistant orally advised the Township about the damage shortly thereafter. Plaintiff did not, **[*2]** however, send a written notice of tort claim to the Township within the ninety-day deadline prescribed by *N.J.S.A. 59:8-8*. On March 12, 2019, plaintiff filed a motion to file a late notice of claim. In denying that motion, Judge McGovern determined that the affidavit in support of the application "fail[ed] to describe exactly what happened, where, and when; only that claimant verbally 'notified' the Township on [March 13, 2018] but this is inadequate factually. It is impossible to discern from [plaintiff]'s papers *when* the claim accrued."[1]

On May 6, 2019, plaintiff filed a motion for reconsideration. In support of that motion, plaintiff offered additional information that had not been provided at the time he filed his initial motion. After oral argument, Judge McGovern noted that "[plaintiff's] motion for reconsideration advances additional and extensive new information that the [c]ourt did not have

[1] At the motion hearing, the Township contended that the damage accrued as of the snowstorm on March 7-8, 2018, thus rendering plaintiff's March 12, 2018 motion for leave to file a late notice of claim fatally noncompliant with the one-year deadline imposed under *N.J.S.A. 59:8-9*. The Township renews this contention on appeal. Because we affirm Judge McGovern's decision on the merits, we need not address this issue further.

at its disposal upon the original motion . . . which was in the possession of [defendant] . . . when he filed his original application; but he didn't include it." The judge concluded this new information was improperly presented.

Over the Township's objection, Judge McGovern ruled that the damage to plaintiff's **[*3]** property occurred on March 13, 2018 and that plaintiff therefore filed the motion for leave to file a late notice of claim one day before the expiration of the one-year deadline for such applications. However, Judge McGovern also determined that plaintiff failed to establish extraordinary circumstances for the late filing or otherwise demonstrate that the Township has not been substantially prejudiced by the delay in filing a notice of claim. Accordingly, the judge denied plaintiff's motion for reconsideration.

I.

We begin our analysis by acknowledging the legal principles applicable to this appeal. Claims against a public entity for damages are governed by the Tort Claims Act (TCA), *N.J.S.A. 59:1-1 to - 14*. The TCA defines the extent of the Legislature's waiver of sovereign immunity and "establishes the procedures by which claims may be brought[.]" *Beauchamp v. Amedio, 164 N.J. 111, 116, 751 A.2d 1047 (2000)*. Pursuant to the TCA, any plaintiff bringing a tort suit against a public entity must file a pre-suit notification of the claim in writing within ninety days of the accrual of the action or else be "forever barred" from asserting that cause of action. *Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 518 A.2d 758 (App. Div. 1986)*. "The rationale underlying the notice requirement of the Act is to expedite investigation with the hope of reaching **[*4]** a nonjudicial settlement and to allow the public entity prompt access to information about the claim so that it may prepare a defense." *Wood v. Cnty of Burlington, 302 N.J. Super. 371, 375, 695 A.2d 377 (App. Div. 1997)* (quoting *Pilonero v. Twp. of Old Bridge, 236 N.J. Super. 529, 533, 566 A.2d 546 (App. Div. 1989))*. Oral notice cannot satisfy this obligation. *See Velez v. City of Jersey City, 358 N.J. Super. 224, 238, 817 A.2d 409 (App. Div. 2003)*. "Oral notice, even where it contains the elements required by *N.J.S.A. 59:8-4*, does not constitute substantial compliance." *Ibid.* (citing *Anske v. Borough of Palisades Park, 139 N.J. Super. 342, 348, 354 A.2d 87 (App. Div. 1976))*.

The TCA permits late filing only under limited circumstances. *N.J.S.A. 59:8-9* provides that:

> A claimant who fails to file notice of his claim within the [ninety] days as provided by *section 59:8-8* of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity . . . has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed in *section 59:8-8* of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter[.]

Leave to file a late notice of claim **[*5]** must be sought within a reasonable period of time after the abatement of whatever conditions necessitated late filing in the first place. *See Wood, 302 N.J. Super. at 380* (unexplained nine-month delay in filing motion for leave to file late notice contributed to denial of motion which was brought at the end of the one-year period).

The scope of appellate review is narrow. "The [trial judge] has discretion to grant or deny permission to file a late notice of claim within the one-year period, and the decision 'will be sustained on appeal in the absence of a showing of an abuse thereof.'" *O'Neill v. City of Newark, 304 N.J. Super. 543, 550, 701 A.2d 717 (App. Div. 1997)* (quoting *Lamb v. Global Landfill Reclaiming, 111 N.J. 134, 146, 543 A.2d 443 (1988))*.

Motions for reconsideration are governed by *Rule 4:49-2*, which states in relevant part that, "[t]he motion shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred[.]" A motion for reconsideration provides the court—not the litigant—with an opportunity to take the proverbial "second bite at the apple" to correct errors inherent in a prior ruling. *Medina v. Pitta, 442 N.J. Super. 1, 18, 120 A.3d 944 (App. Div. 2015)*.

"Reconsideration cannot be used to expand the record and reargue a motion," but "is only to point out 'the matters or controlling decisions which **[*6]** counsel believes the court has overlooked or as to which it has erred.'" *Capital Fin. Co. of Del. Valley Inc. v. Asterbadi, 398 N.J. Super. 299, 310, 942 A.2d 21 (App. Div. 2008)* (quoting *R. 4:49-2*). Importantly for purposes of this

appeal, reconsideration cannot be the vehicle to introduce new information in order to cure an inadequacy in the motion record. *See* *Cummings v. Bahr, 295 N.J. Super. 374, 384, 685 A.2d 60 (App. Div. 1996)*.

Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court[.]" *Palombi v. Palombi, 414 N.J. Super. 274, 288, 997 A.2d 1139 (App. Div. 2010)*. Rather, it is reserved for "cases which fall into that narrow corridor" where the prior decision was "based upon a palpably incorrect or irrational basis" or the court failed to consider or appreciate "probative, competent evidence," or where "a litigant wishes to bring new or additional information to the [c]ourt's attention *which it could not have provided on the first application*." *Ibid.* (quoting *D'Atria v. D'Atria, 242 N.J. Super. 392, 401, 576 A.2d 957 (Ch. Div. 1990))* (emphasis added).

Reconsideration "is a matter within the sound discretion of the [judge], to be exercised in the interest of justice." *D'Atria, 242 N.J. Super. at 401*. Accordingly, we will not disturb a trial judge's denial of a motion for reconsideration absent a clear abuse of discretion. *Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382, 113 A.3d 1217 (App. Div. 2015)*. An "abuse of discretion only arises on demonstration of 'manifest error or injustice,'" *Hisenaj v. Kuehner, 194 N.J. 6, 20, 942 A.2d 769 (2008)* (quoting *State v. Torres, 183 N.J. 554, 572, 874 A.2d 1084 (2005))*, and occurs when the trial judge's decision is "made without a rational **[*7]** explanation, inexplicably departed from established policies, or rested on an impermissible basis[.]" *Milne v. Goldenberg, 428 N.J. Super. 184, 197, 51 A.3d 161 (App. Div. 2012)* (quoting *Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571, 796 A.2d 182 (2002))*.

II.

Judge McGovern denied plaintiff's original motion because plaintiff failed to set forth sufficient facts describing the incident, when the claim accrued, and the extraordinary circumstances explaining plaintiff's inability to timely file a notice of claim. Judge McGovern emphasized there was "no adequate certification or affidavit as to why there was a delay in filing the application," and that plaintiff failed "to describe exactly what happened with the who, what, when, and where," that is, "the details . . . factually as to what occurred within the knowledge of the claimant so that the court could make an informed decision."

Plaintiff asserts that he is a "disabled individual, which prevented [him] from filing the Notice of Tort Claim . . . due to said on-going disabilities that are extraordinary circumstances, which are beyond [his] control." A known physical or mental condition can qualify as an extraordinary circumstance, but only if the medical or emotional condition is "severe, debilitating or uncommon." *D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 149-152 (2013), 61 A.3d 906*. The Supreme Court explained that when determining whether **[*8]** such disability constitutes extraordinary circumstances to justify a late notice of claim, "[the judge]'s focus must be directed to the evidence that relates to plaintiff's circumstances as they were during the ninety-day time period, because that is the time during which the notice should have been filed." *Id. at 151*. The *D.D.* Court rejected the plaintiff's claim in that case, noting that "[the plaintiff's] certification [was] vague about the timing of her medical and emotional complaints," the doctor's note submitted in support was "not tied to the relevant time frame," and that there was no "evidence in the record that plaintiff was prevented from acting to pursue her complaint or that her ability to do so was in any way impeded by her medical and emotional state." *Ibid.* The Court thus concluded that the plaintiff had failed to show an inability to properly file, but rather had demonstrated diligence in her efforts in pursuing her claim. *Ibid.*

In the matter before us, the record shows Judge McGovern was appropriately mindful that plaintiff suffered from health issues for which he was receiving treatment. The judge nonetheless determined that the information plaintiff provided from health care **[*9]** professionals regarding his disability failed to establish that he was incapable of timely filing within the ninety-day period. To the contrary, the gravamen of plaintiff's argument on reconsideration was that he was diligent in following up with employees of the Township Department of Public Works regarding his claim, thus demonstrating his health issues did not preclude him from filing a written notice of tort claim. Judge McGovern found, as in *D.D.*, plaintiff's disability was not specifically tied to the ninety-day window and that his efforts demonstrated his attention to the matter. *Id. at 151*. Judge McGovern added that plaintiff employed an assistant responsible for handling his administrative matters. Plaintiff's assistant contacted Township employees about the claim numerous times during the ninety-day window and thus was capable of assisting in filing a written notice of tort claim within the ninety-day period.

Plaintiff also claims Township employees misled him regarding the statutory requirement to file a written notice of claim. Specifically, plaintiff asserts his assistant verbally informed the Township of his desire to file a notice of tort claim but that employees told the assistant **[*10]** that "there was no need to file an actual tort claim form with the town, as the town was already notified and aware of the damage."[2] Plaintiff further asserts his assistant "contacted . . . [a Township employee] in person and via telephone numerous times" and spoke with employees of the Department of Public Works, Town Hall, and the Clerk's office, who never informed plaintiff that a tort claim needed to be filed. Plaintiff also contends the Township failed to provide a tort claim form until March 11, 2019, after the ninety-day deadline expired. The Court in *D.D.* addressed a similar claim alleging that the defendants in that case "failed to alert [the plaintiff] to the statutory filing requirements," and concluded "[it could] find no basis on which to read into the statute any requirement that the plaintiff be advised of the technical requirements for pursuing a claim." *D.D., 213 N.J. at 156*. Moreover, plaintiff alleges that these conversations took place before he filed his initial motion; as such, they should have been properly asserted in support of that motion instead of on reconsideration. *See Cummings, 295 N.J. Super. at 384*.

We conclude that Judge McGovern did not rest his decision upon a palpably incorrect or irrational **[*11]** basis, nor did he fail to consider or appreciate the significance of probative, competent evidence. Rather, the judge acted well within the ambit of his discretion in denying the initial motion for leave to file a late notice of claim and thereafter in denying plaintiff's motion for reconsideration. In denying the reconsideration motion, Judge McGovern properly rejected plaintiff's belated attempt to cure his original motion's deficiencies by including additional information that could have and should have been provided at the outset. We agree with Judge McGovern that the procedural requirements of the TCA are not relaxed because a litigant is self-represented. *See Rosenblum v. Borough of Closter, 285 N.J. Super. 230, 241, 666 A.2d 1006 (App. Div. 1995)* ("Procedural rules are not abrogated or abridged by plaintiff's pro se status.").

Finally, plaintiff contends Judge McGovern abused his discretion because he "provided no written findings or opinions. . . for the [May 31, 2019] order[.]" We disagree and note that Judge McGovern acted well within his discretion by providing a statement of reasons on the record at the conclusion of the May 31, 2019 oral argument. *See R. 1:7-4(a)* (providing that a trial judge "shall, by an opinion or memorandum decision, *either written or oral*, find the **[*12]** facts and state its conclusions of law thereon . . . .") (emphasis added).

To the extent we have not addressed them, any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion in this opinion. *R. 2:11-3(e)(1)(E)*.

Affirmed.

---

End of Document

---

[2] It is not clear from plaintiff's submissions whether he is arguing on appeal that oral notice to the Township was sufficient. We note that the TCA clearly provides that notice in writing is required even when oral notice has been provided. *See N.J.S.A. 59:8-4*; *see also Velez, 358 N.J. Super. at 238* (noting that oral notice does not constitute substantial compliance); *In re Roy, 142 N.J. Super. 594, 601, 362 A.2d 589 (App. Div. 1976)* (holding that an argument that notice given during an oral conversation constituted substantial compliance is "without merit").

# Exhibit B

Neutral
As of: April 14, 2025 6:30 PM Z

# Meale v. City of Egg Harbor City

United States District Court for the District of New Jersey, Camden Vicinage

February 19, 2016, Decided; February 19, 2016, Filed

Civil No. 14-5860 (RMB/JS)

**Reporter**
2016 U.S. Dist. LEXIS 20251 *; 2016 WL 686442

CHRISTINE MEALE, Plaintiff, v. CITY OF EGG HARBOR CITY, POLICE OFFICER STEVEN HADLEY, and POLICE OFFICER CHRISTOPHER HOFFMAN, et al., Defendants.

**Prior History:** *Meale v. City of Egg Harbor City, 2015 U.S. Dist. LEXIS 81068 (D.N.J., June 23, 2015)*

## Core Terms

motion to amend, allegations, substantial compliance, conspiracy, requirement of notice, notice, proposed amended complaint, state law tort claim, public entity, sexual abuse, reasons, accrual, animus, futile, notice of claim, leave to amend, class-based, arrest, sexual

**Counsel:** **[*1]** For Plaintiff: Jennifer Ann Bonjean, Bonjean Law Group PLLC, Brooklyn, NY.

For City of Egg Harbor City and Officer Christopher Hoffman, Defendants: Sarir Zandi Silver, Vincent M. Avery, Gordon & Rees LLP, Florham Park, NJ; Steven M. Berlin, Gordon & Rees LLP, New York, NY.

For Officer Steven Hadley, Defendant: John Michael Bowens, Cynthia Lynn Flanagan, Thomas Joseph Cotton, Schenck, Price, Smith & King LLP, Florham Park, NJ.

**Judges:** RENÉE MARIE BUMB, UNITED STATES DISTRICT JUDGE.

**Opinion by:** RENÉE MARIE BUMB

## Opinion

[Docket No. 41]

**OPINION**

**BUMB**, United States District Judge:

This matter comes before the Court upon the motion to amend the complaint filed by Plaintiff Christine Meale [Docket No. 41]. For the reasons set forth below, the Plaintiff's motion shall be granted, in part, and denied, in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This dispute arises from a January 15, 2013 traffic stop, which led to the Plaintiff's arrest by Egg Harbor City Police Officers Steven Hadley ("Hadley") and Christopher Hoffman ("Hoffman") for possession of controlled dangerous substances. The Plaintiff alleges after her arrest, she was subjected to five months of "sexual assault and emotional torment at the hands of disgraced Egg Harbor **[*2]** City police officer Steven Hadley." Proposed Amended Complaint ("Am. Compl.") ¶¶ 1-2 [Docket No. 42].

On January 15, 2013, the Plaintiff was driving with a male acquaintance when she was stopped by Defendant Hoffman. Id. at ¶ 18.[1] Defendant Hoffman asked the Plaintiff and the male passenger to exit the car. Id. at ¶ 19. Hoffman handcuffed the male passenger. Id. at ¶ 20. The Plaintiff alleges that Defendant Hoffman then proceeded to conduct a nonconsensual "intrusive and unlawful search" of her that included fondling her and unbuttoning and pulling her pants partially down. Id. at ¶¶ 22-23, 25. Hoffman then telephoned Hadley and allegedly informed him "in sum and substance that he had [] detained a woman who Hadley could sexually abuse." Id. at ¶ 24.

[1] The Court will accept the Plaintiff's well-pled allegations as true for purposes of this motion to amend, as the Court must evaluate the amended complaint under the same standard as a *Rule 12(b)(6)* motion to dismiss. See *Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)*.

After Defendant Hadley arrived at the scene, he searched the Plaintiff's purse and vehicle without her consent, where he discovered a small bag of marijuana. Id. at ¶ 26. The two officers then transported the Plaintiff to the police **[*3]** department. While in Hoffman's police car, Hoffman told the Plaintiff that "if she 'worked with them,' she could avoid being charged." Id. at ¶ 28. Hadley then stated that so long as she "cooperated" with him, she would not be in any trouble. Id. at ¶ 29. At the police station, while in the same room as Hoffman, Hadley allegedly told the Plaintiff "you know, this will all go away if you just give me a little." Id. at ¶ 34. The Plaintiff was then taken to Defendant Hadley's office. Once alone, Defendant Hadley told the Plaintiff "calm down babe, we can work something out" and then demanded that she lift up her shirt. Id. at ¶¶ 36-38. Although she complied, the Plaintiff also begged to instead become an informant. Id. at ¶ 37.

Defendant Hadley informed the Plaintiff that she could act as a confidential informant in exchange for having any potential criminal drug charges against her dropped and the Plaintiff agreed. Id. at ¶¶ 2, 38, 41-43. Hadley, however, was hesitant to formalize the confidential informant relationship with the Plaintiff and, instead, coerced her into engaging in sexual acts with him and sexually abused her. Id. at ¶¶ 4, 45-47. The Plaintiff reluctantly acquiesced, fearful **[*4]** that she would go to prison where she would be separated from her husband and young daughter. Id. at ¶ 48. This pattern of sexual abuse continued for several months until approximately May 2013.

In approximately April 2013, the Atlantic County Prosecutor's Office began an investigation into allegations against Defendant Hadley by various women who claimed that he had previously arrested and coerced them into sexual relationships. Id. at ¶ 57. Also in April 2013, the Prosecutor's Office informed the Egg Harbor City Police Chief of the investigation and the allegations against Hadley, including those made by the Plaintiff. Id. at ¶ 58. In July 2013, the Plaintiff met with the Prosecutor's Office to discuss her allegations of sexual abuse and misconduct against Hadley. Id. at ¶ 61.[2] At this time, according to the Plaintiff's Proposed Amended Complaint, she "was still defending against drug charges initiated by Defendants Hadley and Hoffman." Id. Eventually, the Plaintiff pled guilty to possession of controlled dangerous substances. Id. at ¶ 56.

On September 24, 2013, Defendant Hadley was criminally charged in connection with official misconduct related to the allegations of sexual abuse made by the Plaintiff and three other women. Id. at ¶¶ 62-63.

On September 22, 2014, based largely on the above allegations, the Plaintiff filed a complaint (the "Original Complaint") against the City of Egg Harbor City (the "City"), Hadley, and Hoffman, as well as unknown Egg Harbor City police officers [Docket No. 1]. In the Original Complaint, the Plaintiff asserted claims under *Section 1983* of the Civil Rights Act for alleged *Fourth*, *Eighth*, and *Fourteenth Amendment* violations against Defendants Hoffman, Hadley, and unknown police officers (Count I), as well as a *Section 1983* Monell claim against the City (Count II). The Plaintiff also asserted state law tort claims against Defendants Hoffman, Hadley, and unknown **[*6]** officers, including, inter alia, assault, battery, trespass, false arrest, conspiracy, slander, negligent infliction of emotional distress, and intentional infliction of emotional distress (Count III). Finally, the Plaintiff asserted a conspiracy to violate civil rights claim under *Section 1985* of the Civil Rights Act against all Defendants (Count IV) and a punitive damages claim against Defendants Hoffman, Hadley, and unknown officers (Count V).

The Defendants moved to dismiss Counts III, IV, and V of the Original Complaint [Docket Nos. 22, 24]. On June 23, 2015, the Court granted the Defendants' motions to dismiss, but permitted the Plaintiff to seek leave to file an amended complaint within twenty-one days. Opinion ("Op.") [Docket No. 38]. In its Opinion, the Court identified certain pleading deficiencies and directed the Plaintiff to remedy these deficiencies in her proposed amended complaint and motion to amend.

Specifically, the Court dismissed the state law tort claims (Count III) because the Plaintiff had not sufficiently alleged compliance, substantial or otherwise, with the notice requirements of the New Jersey Tort Claims Act ("NJTCA"). Under the NJTCA, a plaintiff bringing a claim against **[*7]** a public entity or public employee must give the relevant public entity notice of

[2] While the Plaintiff alleges that she spoke with the Prosecutor's Office in July 2013, she also alleges that in April 2013 the Prosecutor's Office **[*5]** informed the Egg Harbor City police chief of the allegations against Hadley, "including those allegations made by Plaintiff." Am. Compl. ¶¶ 58, 61. Based upon the Proposed Amended Complaint, it is unclear when the Plaintiff first made any allegations against Defendant Hadley known to the Atlantic County Prosecutor's Office. Regardless of the date, the Court's analysis remains the same.

the claim within ninety days of the accrual of the cause of action. N.J.S.A. § 59:8-8. A plaintiff who fails to do so is "forever barred" from recovering against a public entity or employee. Id. The Court, however, granted the Plaintiff an opportunity to file a motion to amend her complaint to include allegations of substantial compliance with the NJTCA's notice requirements and delayed accrual of her causes of action. Op. at 18.

The Court also dismissed the Section 1985 conspiracy claim (Count IV) because the Plaintiff's well-pled allegations were insufficient "to demonstrate the requisite class-based animus against women[.]" Op. at 20. The Plaintiff was also permitted to cure this deficiency via leave to amend her complaint.

On July 15, 2015, the Plaintiff filed a motion to amend her complaint and a Proposed Amended Complaint [Docket Nos. 41, 42]. The Defendants have opposed the motion [Docket Nos. 43, 44].

## II. LEGAL STANDARD

Motions to amend are governed by Federal Rule of Civil Procedure 15(a), which states in relevant part:

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive **[*8]** pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Leave to amend generally is "freely given." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (quoting Foman, 371 U.S. at 182). However, a district court has discretion to deny leave to amend "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Id.

"Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014) (citing Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010)). Therefore, in determining whether an amendment is futile, this Court must apply "the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)." Travelers, 594 F.3d at 243 (internal quotations and modifications omitted) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)).

Therefore, the Plaintiff's motion to amend should only be granted if the Proposed Amended Complaint "contain[s] sufficient **[*9]** factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); accord Budhun, 765 F.3d at 259.

## III. ANALYSIS

### A. New Jersey Tort Claims Act Notice

The NJTCA states: "No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. § 59:8-3. Additionally, the NJTCA explains that a "claimant shall be forever barred from recovering against a public entity or public employee if: (a) The claimant failed to file the claim with the public entity within 90 days of accrual of the claim . . . ." N.J.S.A. § 59:8-8. Under "extraordinary circumstances," a claimant may seek a court's permission to file a late notice of claim "at any time within one year" of the cause of action's accrual. N.J.S.A. § 59:8-9. The Court has already ruled that the NJTCA applies to the Plaintiff's state law tort claims against the Defendants. See generally Op. at 6-18.

The Defendants previously moved to dismiss Count III of the Original Complaint, which sets forth various state law tort claims against the Defendants, for failure to comply with the notice requirements of the NJTCA. In opposition, the **[*10]** Plaintiff argued that she "substantially complied" with the NJTCA's notice requirements and that there is an outstanding issue as to when, exactly, her state law tort claims accrued.[3] The

[3] The Plaintiff also argued that she is excused from complying

Court rejected both arguments, but, nevertheless, granted the Plaintiff an opportunity to seek leave to amend her complaint to set forth allegations supporting these two theories. Op. at 18.

### i. Delayed Accrual

As Defendant Hadley notes, the Plaintiff's Motion to Amend does not address the question of delayed accrual of her causes of action. See Hadley Opposition Brief at 6 [Docket No. 43]. The Motion to Amend, in fact, concedes that the Plaintiff seeks only to include additional facts to establish substantial compliance with the NJTCA's notice requirements and class-based discriminatory animus as required for the **[*11]** Plaintiff's conspiracy claim under *Section 1985(3)*, which is addressed infra. Motion to Amend at 1. Therefore, this Court continues to reject this argument for the reasons set forth in its June 23, 2015 Opinion. See Op. at 16-18.

Based on the allegations in the Proposed Amended Complaint, the Plaintiff's claims accrued no later than May 2013. Am. Compl. ¶¶ 1, 44-49. As such, the 90-day window during which the Plaintiff could have filed a notice of claim with the City expired, at the very latest, at the end of August 2013 or early September 2013. Had extraordinary circumstances presented themselves, the Plaintiff could have sought leave of a court to file late notice by May 2014. She did not do so. The Plaintiff did not file the instant lawsuit until September 22, 2014. Thus, unless the Plaintiff can allege facts, viewed in the light most favorable to her, to establish substantial compliance with the NJTCA's notice requirements, leave to amend the complaint as to Count III would be futile.

### ii. Substantial Compliance

While no formal notice was provided to the City regarding the Plaintiff's claims against the Defendants, the Plaintiff contends that her cooperation with a criminal investigation into Defendant **[*12]** Hadley's misconduct constitutes "substantial compliance" with the NJTCA's notice requirements. This is the same argument that the Court flatly rejected in its June 23, 2015 Opinion.

with the NJTCA's notice requirements because, under the NJTCA, a public employee is not immune from liability where he engaged in conduct that constituted a crime or willful misconduct. *N.J.S.A. § 59:3-14*. The Court rejected this argument outright and, as such, this issue is not before the Court upon the Plaintiff's Motion to Amend. See Op. at 10-11.

The Plaintiff's additional allegations in support of this theory are inadequate to establish substantial compliance with the notice requirements of the NJTCA. "Although the doctrine of substantial compliance has occasionally been applied in the tort claims context, it has been limited carefully to those situations in which notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." *D.D. v. University of Medicine and Dentistry of New Jersey, 213 N.J. 130, 159, 61 A.3d 906 (2013)*.

The Plaintiff's argument that she substantially complied with the NJTCA's notice requirements even though she "did not meet the technical requirements of the Act by sending a 'writing' to the City" misses the point. Motion to Amend at 2. A "writing" is required not just for actual compliance, but also for substantial compliance. The Supreme Court of New Jersey, observing that "it is elementary that, at a very minimum, a notice of claim under the Act must be in writing," recently held that "oral notice, even where it contains **[*13]** the elements required by *N.J.S.A. 59:8-4*, does not constitute substantial compliance." *D.D., 213 N.J. at 159* (internal quotations and modifications omitted) (quoting *Velez v. City of Jersey City, 358 N.J. Super. 224, 238, 817 A.2d 409 (App. Div. 2003)*).

The additional allegations set forth in the Proposed Amended Complaint do not cure the deficiencies previously identified by this Court. First, the Plaintiff concedes that she never provided a writing to the City regarding her claims against the Defendants. Second, the Plaintiff does not allege that her conversation with the Prosecutor's Office contained the elements required by *N.J.S.A. § 59:8-4*.[4] In fact, the only allegation regarding her conversation with the Prosecutor's Office

[4] *N.J.S.A. § 59:8-4* requires a claim to include: "(a) The name and post office address of the claimant; (b) The post-office address to which the person presenting the claim desires notices to be sent; (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted; (d) A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim; (e) The name or **[*14]** names of the public entity, employee or employees causing the injury, damage or loss, if known; and (f) The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed."

merely states that "[i]n July, 2013, Plaintiff sat down with Atlantic County Prosecutors to shore [sic] how Defendant Hadley had abused her." Am. Compl. ¶ 61.

The only case cited by the Plaintiff in her Motion to Amend to support her substantial compliance argument is *Ewing v. Cumberland County, 2015 U.S. Dist. LEXIS 37543, 2015 WL 1384374 (D.N.J. Mar. 25, 2015)*. The Court, however, has already explained at length why her reliance on Ewing is both misplaced and unavailing. Op. at 14. In Ewing, the plaintiff's attorney provided a written letter to the prison warden that "provided essentially the same information required under *N.J.S.A. § 59:8-4*." *2015 U.S. Dist. LEXIS 37543, [WL] at *21*. For these reasons, the *Ewing* court found that the letter served the purposes of the NJTCA's notice requirements. Id. As aforementioned, nothing in the Proposed Amended Complaint alleges that the Plaintiff conveyed the information required by *N.J.S.A. § 59:8-4* to the Prosecutor's Office, let alone that she did so in writing.

At most, the Plaintiff made a mere oral statement in support of possible criminal charges against Defendant Hadley. This Court holds **[*15]** that this is insufficient to constitute substantial compliance with the NJTCA's notice requirements. *D.D., 213 N.J. at 159*; *Ingram v. Twp. of Deptford, 911 F. Supp. 2d 289, 295 (D.N.J. 2012)*. Mere knowledge of possible misconduct on the part of Defendant Hadley is inadequate to put the Defendants on notice of her state law tort claims as required by the NJTCA. See *Ingram, 911 F. Supp. 2d at 295*.

The deficiencies in the Plaintiff's alleged notice of claim go far beyond the "technical deficiencies" in notice that the equitable doctrine of substantial compliance was designed to remeddy. See *D.D., 213 N.J. at 159*. Under these circumstances, to permit the Plaintiff to pursue her state law tort claimy. See *D.D., 213 N.J. at 159*. Under these circumstances, to permit the Plaintiff to pursue her state law tort claims against the Defendants would be to eviscerate the NJTCA's notice of claim requirements altogether. This Court declines to do so.

For the foregoing reasons, the Court holds that Count III of the Plaintiff's Proposed Amended Complaint does not state a claim upon which relief may be granted. The Motion to Amend as to Count III is denied as futile.

**B. Conspiracy Under 28 U.S.C. § 1985(3)**

To state a claim for conspiracy to deprive the Plaintiff of her civ\il rights under *Section 1985(3)*, the Plaintiff must plead four essential elements:

> (1) a conspiracy;
>
> (2) motivat[ion] by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class **[*16]** of persons [of] the equal protection of the laws;
>
> (3) an act in furtherance of the conspiracy; and
>
> (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Livingston v. Borough of Edgewood, 430 F. App'x 172, 178 (3d Cir. 2011)* (quoting *Lake, 112 F.3d at 685*). The Court previously held that, "read generously," the allegations in the Original Complaint were sufficient to plead a conspiracy. Op. at 20. Notably absent, however, were any allegations regarding class-based animus against women. In the Proposed Amended Complaint, the Plaintiff alleges additional facts to support her position that Hadley and Hoffman were motivated by class-based animus against women. Am. Compl. ¶¶ 78-83.

Women are clearly identifiable as a class for purposes of this analysis. *McArdle v. Hufnagel, 588 F. App'x 118, 121 (3d Cir. 2014)* ("Members of a protected class under *§ 1985(3)* have at least one of certain 'immutable characteristics.' These include race, gender, national origin, and mental handicap.") (emphasis added) (citing *Lake, 112 F.3d at 687*). The question, however, is whether the Plaintiff has sufficiently alleged that Defendants Hadley and Hoffman were motivated by class-based animus against women when they targeted her for sexual abuse.

The Plaintiff has alleged that she was targeted by Defendants Hadley and Hoffman for **[*17]** sexual harassment and abuse because she was a woman. Am. Compl. ¶ 80-83. She also alleges that Defendants Hadley and Hoffman had previously targeted other women for such abuse, but that they did not sexually abuse or harass men that they stopped or arrested. Id. at ¶¶ 81-82. For example, the Plaintiff alleges that the male passenger in her car during the January 15, 2013 traffic stop was ordered out of the vehicle and handcuffed without issue, while she was forced to unbutton her pants in public and was fondled by Defendant Hoffman. Id. at ¶ 19-20, 22-23.

To establish a gender discrimination claim, a plaintiff

must "prove adverse action taken against her on account of her gender, when compared with the treatment of men." *Downey v. Coal. Against Rape & Abuse, Inc., 143 F. Supp. 2d 423, 452 n. 7 (D.N.J. 2001)* (citing *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)*; *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*); see also *Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)* ("To bring a successful claim under *42 U.S.C. § 1983* for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they received different treatment from that received by other individuals similarly situated. Specifically to prove sexual discrimination, a plaintiff must show that any disparate treatment was based upon her gender.") (internal quotations, citations, and modifications omitted).

At this **[*18]** stage, the Plaintiff has alleged sufficient facts to support her Section 1985(3) conspiracy claim. For these reasons, the Plaintiff's Motion to Amend is granted as to Count IV of the complaint.

**IV. CONCLUSION**

For the reasons set forth above, the Plaintiff's Motion to Amend is GRANTED, in part, and DENIED, in part. Specifically, the Motion to Amend is GRANTED as to Count IV (conspiracy under *Section 1985(3)*) and DENIED as to Count III (state law tort claims). Count III is DISMISSED with prejudice due to the Plaintiff's failure to comply with the NJTCA's notice of claim requirements. An appropriate Order shall issue on this date.

/s/ Renée Marie Bumb

RENÉE MARIE BUMB

UNITED STATES DISTRICT JUDGE

Dated: February 19, 2016

**ORDER**

THIS MATTER having come before the Court upon Plaintiff Christine Meale's Motion to Amend her complaint [Docket No. 41]; and the Court having reviewed the parties' submissions; and for the reasons set forth in the Opinion issued this date;

IT IS HEREBY on this **19th** day of **February 2016**,

**ORDERED** that the Plaintiff's Motion to Amend [Docket No. 41] is **GRANTED, IN PART, and DENIED, IN PART**; and it is further

**ORDERED** that the Plaintiff's Motion to Amend is **DENIED** as futile as to the Plaintiff's **[*19]** state law tort claims (Count III); and it is further

**ORDERED** that the Plaintiff's state law tort claims (Count III) are **DISMISSED WITH PREJUDICE** for failure to comply with the notice of claim requirements set forth in the New Jersey Tort Claims Act; and it is further

**ORDERED** that the Plaintiff's motion to amend is **GRANTED** as to the Plaintiff's *Section 1985* conspiracy claim (Count IV); and it is further

**ORDERED** that, on or before March 4, 2016, the Plaintiff shall file an Amended Complaint consistent with the terms of this Order and this Court's Opinion issued on this date.

/s/ Renée Marie Bumb

RENÉE MARIE BUMB

UNITED STATES DISTRICT JUDGE

---

**End of Document**

# Exhibit C

Neutral
As of: April 14, 2025 6:31 PM Z

# Gazzillo v. Board of Educ., S. Hunterdon Reg'l High School

Superior Court of New Jersey, Appellate Division

December 20, 2005, Argued; January 25, 2006, Decided

DOCKET NO. A-3167-04T1

**Reporter**

2006 N.J. Super. Unpub. LEXIS 728 *; 2005 WL 3695758

HELEN A. GAZZILLO, Plaintiff-Appellant, v. BOARD OF EDUCATION, SOUTH HUNTERDON REGIONAL HIGH SCHOOL, Defendant-Respondent.

**Notice:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION.

PLEASE CONSULT NEW JERSEY RULE 1:36-3 FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** **[*1]** On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, L-577-04.

## Core Terms

tort claim, notice, extraordinary circumstances, trial court, substantial compliance, sexual assault, reasons, workers' compensation, permission to file, workplace injury, failure to file, timely notice, file a claim, late notice, oral notice

**Counsel:** Kenneth W. Thomas argued the cause for appellant (Thatcher & Lanza, attorneys; John R. Lanza of counsel and Mr. Thomas, on the brief).

Jeffrey L. Shanaberger argued the cause for respondent (Hill Wallack, attorneys; Mr. Shanaberger and Christina L. Saveriano, on the brief).

**Judges:** Before Judges Hoens and R. B. Coleman.

## Opinion

PER CURIAM

Plaintiff Helen M. Gazzillo appeals from an order dated January 21, 2005, denying her motion for permission to file a late notice of claim against her employer, the Board of Education of South Hunterdon Regional High School (the Board) and her supervisor, Robert Grieb. We affirm.

The facts are not disputed. Plaintiff was an employee of the school, working as a custodian. She asserts she was sexually assaulted by Grieb on July 20, 2004, and on that date, she told other people, including her supervisor, Patrick Connelly, of the assault. Plaintiff continued to work until September 22, 2004 when, according to her, at the instruction of her physician, she stopped working. On October 5, 2004, plaintiff informed the Board, via letter from her attorney, that she had sustained a workplace **[*2]** injury and intended to file a claim for workers' compensation benefits. The nature and cause of her injury were not mentioned in that letter. By a separate letter dated October 5, 2004, plaintiff informed the police that she had been sexually assaulted.

On October 29, 2004, plaintiff filed an Employee's Claim Petition with the Division of Workers' Compensation (the Division). On November 30, 2004, the Board filed an answer in the Division, admitting that plaintiff was in its employ on the date alleged in the petition, but denying that the alleged injury arose out of or in the course of employment.

On December 6, 2004, plaintiff filed a notice of motion seeking permission to file a late tort claim notice pursuant to *N.J.S.A. 59:8-9*. [1] The ninety-day period for

---

[1] *N.J.S.A. 59:8-9* states:

> A claimant who fails to file notice of his claim within 90 days as provided in *section 59:8-8* of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting

the filing of a notice of claim, as required by *N.J.S.A. 59:8-8*, expired on October 18, 2004. Plaintiff argued to the trial court, and in the present appeal, that she substantially complied with the notice requirements of the Tort Claims Act because she gave oral notice of the incident to her supervisor, Connelly, and because she informed the Board in writing that she intended to file a claim petition. Alternatively, plaintiff contends **[*3]** that extraordinary circumstances excuse her failure to file a timely notice. *See* *N.J.S.A. 59:8-9*.

The motion judge rejected the substantial compliance argument, reasoning that oral notice is unacceptable **[*4]** and that the October 5 letter to the Board was vague in that it did not include the elements of a tort claims notice and only referred to a workers' compensation claim. In this case, the trial court properly concluded that plaintiff failed to substantially comply with the statutory content requirements of *N.J.S.A. 59:8-4* since her letter only stated she suffered a workplace injury. *Newberry v. Twp. of Pemberton, 319 N.J. Super. 671, 679-80, 726 A.2d 321 (App. Div. 1999)*. "At the very least in order to comply with *N.J.S.A. 59:8-4(c)*," plaintiff had to provide some indication to the Board that she had a tort claim for sexual assault against it. *Id. at 680*.

"The granting or denial of permission to file a late claim within the one year period is a matter left to the sound discretion of the trial court, and will be sustained on appeal in the absence of a showing of an abuse thereof." *Lamb v. Global Landfill Reclaiming, 111 N.J. 134, 146, 543 A.2d 443 (1988)* (citations omitted). The motion judge rejected plaintiff's application for permission to file a late notice because extraordinary circumstances that would cause her to delay filing her claim were not present. Although the Legislature amended the Tort Claims Act in **[*5]** 1994 to require that a claimant meet a more demanding standard by showing "extraordinary circumstances," rather than "sufficient reasons," for late filing, that term was not defined. *Lowe v. Zarghami, 158 N.J. 606, 626, 731 A.2d 14 (1999)*. This "necessarily leaves it for a case-by-case determination as to whether the reasons given rise to the level of 'extraordinary' on the facts presented." *Ibid.* (citations omitted). *See also* *Blank v. City of Elizabeth, 318 N.J. Super. 106, 110, 723 A.2d 75 (App. Div. 1999)*. In this case, the trial court determined that plaintiff failed to satisfy the statutory standard since she offered no extraordinary circumstances that would explain or excuse her failure to file a timely notice of claim. We perceive no abuse of discretion in that determination.

Accordingly, we affirm the January 21, 2005 order of the Law Division substantially for the reasons expressed by Judge Buchsbaum in his oral statement from the bench denying plaintiff's motion. [2]

Affirmed.

---

**End of Document**

extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by *section 59:8-8* of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

[2] We note a disparity between the date on the order - January 21, 2005 - and the date reflected on the cover sheet of the transcript of the continuation of the oral argument - January 25, 2005. The noted disparity is of no consequence to **[*6]** the disposition of this appeal.

# Exhibit D

Cited
As of: April 14, 2025 6:43 PM Z

# Barbieri v. Mayer

Superior Court of New Jersey, Appellate Division

November 9, 2015, Argued; December 21, 2015, Decided

DOCKET NO. A-0362-14T1

**Reporter**
2015 N.J. Super. Unpub. LEXIS 2961 *

NICHOLAS R. BARBIERI, Plaintiff-Appellant, v. JOHN D. MAYER and BOROUGH OF SPOTSWOOD, Defendants-Respondents.

**Notice:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION.

PLEASE CONSULT NEW JERSEY *RULE 1:36-3* FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** **[*1]** On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6153-10.

## Core Terms

notice, requirement of notice, equitable, public entity, timely notice, trial court, laches, tort claim, defendants'

**Counsel:** John R. Gorman argued the cause for appellant (Lutz, Shafranski, Gorman and Mahoney, P.A., attorneys; Mr. Gorman, of counsel and on the brief; Randi S. Greenberg, on the brief).

Brian J. Chabarek argued the cause for respondents (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Mr. Chabarek, of counsel and on the brief; Leslie S. Park, on the brief).

**Judges:** Before Judges Sabatino and Suter.

## Opinion

PER CURIAM

This *Title* 59 case involves a plaintiff's failure to serve a timely notice of tort claim. The trial court granted summary judgment in favor of defendants because of that failure. On appeal, plaintiff raises various equitable arguments for reviving his lawsuit in spite of his noncompliance with the statutory notice requirements. For the reasons that follow, we reject those arguments, and affirm.

The record shows that on September 8, 2008, plaintiff Nicholas R. Barbieri was struck and injured by a garbage truck owned by defendant Borough of Spotswood and operated by its employee, co-defendant John D. Mayer. The Borough is covered by the county's municipal joint insurance fund for claims brought **[*2]** under the Tort Claims Act ("TCA" or "the Act"), *N.J.S.A. 59:1-1 to 59:12-3*. A claims adjuster for the fund, Thomas Kurtz, was notified of the accident later that day. That same day, Kurtz mailed plaintiff a notice of claim form with instructions on how to fill it out. After not receiving a response, Kurtz mailed a second copy of the claim form to plaintiff on October 16, 2008.

The attorney who was representing plaintiff at the time apparently completed the claim form, but he never mailed it back to Kurtz or the Borough. The ninety-day period prescribed by *N.J.S.A. 59:8-8*[1] for serving a notice of claim elapsed on December 7, 2008. In addition, the extended period of one year for serving a late notice of claim in instances of proven "extraordinary circumstances" elapsed on September 8, 2009.[2]

Eventually, in August 2010, plaintiff's original counsel filed a complaint in the Law Division against defendants within the two-year statute of limitations. *See* *N.J.S.A.*

[1] This section of the TCA mandates that a plaintiff file with the public entity a tort claims notice "not later than the ninetieth day after accrual of the cause of action." *N.J.S.A. 59:8-8*.

[2] *See* *N.J.S.A. 59:8-9* (authorizing courts to allow the filing of a late notice of claim within one year of the claim's accrual, provided that the plaintiff demonstrates "extraordinary circumstances" to justify the delay and where the lateness does not "substantially prejudice[]" the defendant **[*3]** public entity or public employee).

59:8-9. The complaint was administratively dismissed for lack of prosecution in March 2011. Subsequently, plaintiff's attorney's license to practice law was suspended in April 2012, for failure to cooperate with disciplinary authorities concerning another client's complaint, after having earlier been reprimanded for gross negligence and lack of due diligence unrelated to the present case.

Plaintiff retained his present counsel in May 2012. His new counsel contacted the defendants' claims adjuster, Kurtz, who informed him in August 2012 that the public entity had never received a completed notice of claim form. Kurtz also mailed plaintiff's current counsel a letter on November 14, 2012, stating that plaintiff's claim was being rejected for failure to file a timely notice.

In November 2012, plaintiff's current counsel moved to reinstate the complaint, and the trial court granted the motion in December 2012. Defendants filed an answer denying liability and asserting, among other affirmative defenses, **[*4]** a failure by plaintiff to serve a timely notice of claim in compliance with N.J.S.A. 59:8-8.

Discovery proceeded for over a year. The discovery included the deposition of plaintiff, as well as plaintiff's submission to multiple independent medical examinations requested by the defense.

After discovery ended, defendants moved for summary judgment, contending that the lawsuit is barred by statute because of plaintiff's failure to file the required notice of claim. The trial court granted that motion in an oral opinion issued by Judge Barry A. Weisberg on August 22, 2014. Judge Weisberg noted that there is "absolutely no dispute" that plaintiff and his then-attorney failed to file a notice of claim within the time required under the TCA.

The judge rejected plaintiff's argument that defendants should be equitably estopped from invoking the notice requirement. The judge did question defense counsel extensively about why his office had waited until June 2014 to move to dismiss the complaint for noncompliance with N.J.S.A. 59:8-8. Nevertheless, the judge concluded that the Legislature's policies underlying the TCA's notice requirements mandated dismissal in this case. As the judge noted in his oral opinion, "the public entity **[*5]** [in this case] has from day one insisted on its right to notice of claim by sending, literally sending the forms twice to . . . plaintiff and raising the defense in its initial pleading[,]" thus suggesting it had never "in any way . . . equitably waive[d]" the failure of notice defense.

On appeal, plaintiff contends that the trial court erred in declining to preserve his case under principles of equitable estoppel. He also invokes the equitable doctrine of laches. Neither of these arguments are compelling. Nor do they permit us to disregard plaintiff's uncontested failure to file a timely notice in compliance with the statute.

As the Supreme Court continues to reaffirm, the "guiding principle" of the TCA is "that 'immunity from tort liability is the general rule and liability is the exception.'" D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 133, 61 A.3d 906 (2013) (quoting Coyne v. State Dep't of Transp., 182 N.J. 481, 488, 867 A.2d 1159 (2005)). "The Legislature's waiver of sovereign immunity remains a limited one and [this court is] not free to expand that waiver beyond its statutorily-established boundaries." Id. at 158.

As the Court further instructed in *D.D.*, our courts may not "permit sympathy for a particular plaintiff to obscure the statutory standard [for a timely notice of claim] to the point of obliterating it." Id. at 158. This is because **[*6]** "[t]he Legislature has commanded that [such] relief be granted only in circumstances that are extraordinary." *Ibid.* Hence, neither "an attorney's inattention, [n]or even an attorney's malpractice, constitutes an extraordinary circumstance sufficient" to permit filing a notice of claim outside of the one-year window of N.J.S.A. 59:8-9, even if there is a lack of prejudice to the plaintiff. Id. at 156; *see also* Beauchamp v. Amedio, 164 N.J. 111, 118, 751 A.2d 1047 (2000) (explaining the more stringent standards for timely claim notices following the TCA's amendment in 1994).

The Legislature has directed that "*[n]o action* shall be brought against a public entity . . . under th[e] [TCA] unless the claim upon which it is based shall have been presented in accordance with the procedure set forth" by the Act. N.J.S.A. 59:8-3 (emphasis added). Claimants "*shall be forever barred* from recovering against a public entity" if, among other things, the claimant "failed to file [the] claim with the public entity within [ninety] days of accrual of [the] claim except as otherwise provided in N.J.S.A. 59:8-9[.]" N.J.S.A. 59:8-8(a) (emphasis added).

Time after time this court has made abundantly clear that, after the ninety-day deadline has passed and a plaintiff has not utilized the procedure under N.J.S.A. 59:8-9 to obtain an extension of that period up to one year, **[*7]** courts lack jurisdiction to entertain tort claims if the required notices were not timely filed. *See, e.g.,*

Iaconianni v. N.J. Tpk. Auth., 236 N.J. Super. 294, 298, 565 A.2d 1084 (App. Div. 1989), *certif. denied*, *121 N.J. 592, 583 A.2d 299 (1990)* ("Because the late notice of claim was filed well beyond the one-year outer limit, the trial court had no jurisdiction to extend the filing period."); *see also* Pilonero v. Twp. of Old Bridge, 236 N.J. Super. 529, 532, 566 A.2d 546 (App. Div. 1989) ("After the one-year limitation has passed, 'the court is without authority to relieve a plaintiff from his failure to have filed a notice of claim, and a consequent action at law must fail.'") (quoting Speer v. Armstrong, 168 N.J. Super. 251, 255, 402 A.2d 963 (App. Div. 1979)). Indeed, the filing of a late notice of claim with the public entity, in the absence of prior court approval pursuant to N.J.S.A. 59:8-9, has been deemed a nullity. Rogers v. Cape May Cty., 208 N.J. 414, 427, 31 A.3d 934 (2011).

As Judge Weisberg correctly recognized, none of the equitable arguments raised by plaintiff in this unfortunate situation can circumvent these principles and salvage his lawsuit. We address them briefly.

First, the doctrine of equitable estoppel is unavailing here because there is no evidence that defendants or their claims adjuster ever made any representations or engaged in any conduct indicating that they were somehow waiving the TCA's notice requirements. *See, e.g.,* McDade v. Siazon, 208 N.J. 463, 480-81, 32 A.3d 1122 (2011) (similarly rejecting a plaintiff's invocation of equitable estoppel to excuse his **[*8]** failure to file a timely tort claims notice upon the defendant public entity where, as here, the plaintiff never filed a motion under N.J.S.A. 59:8-9 to extend the time to serve the notice and where the defendant gave no indication that it was waiving the notice requirement).

The counter-examples cited by plaintiff of Anske v. Borough of Palisades Park, 139 N.J. Super. 342, 354 A.2d 87 (App. Div. 1976), and Hill v. Middletown Bd. of Educ., 183 N.J. Super. 36, 443 A.2d 225 (App. Div.), *certif. denied*, *91 N.J. 233, 450 A.2d 556 (1982)*, in which equitable estoppel was applied to excuse late tort claims notices, are not dispositive. Those cases preceded the 1994 statutory amendment that tightened the TCA's notice requirements and curtailed the exception in N.J.S.A. 59:8-9. If anything, the Supreme Court's more recent opinion in *D.D.* signals a strong judicial reluctance to bypass the statute's notice requirements. *See generally* D.D., supra, 213 N.J. at 156-60.

We are mindful, as was the motion judge here, that the defendants' claims adjuster was made aware of the accident on the day it occurred. However, awareness of that event alone does not fulfill the many other objectives of the TCA's notice provision, including a prompt opportunity before suit is filed to ascertain the extent of a plaintiff's claimed injuries and investigate his version of the precipitating events, as well as a chance to avoid litigation altogether through negotiation. **[*9]** *See generally* Beauchamp, supra, 164 N.J. at 121-22.

Unfortunately, plaintiff's original attorney was clearly remiss in following through with the service of a timely notice. By the time the case file was transferred to plaintiff's new counsel more than a year after the accident, it was simply too late for that oversight to be cured. As the Court underscored in *D.D.*, an attorney's inattention cannot justify a plaintiff's noncompliance with the statute. D.D., supra, 213 N.J. at 156.

Second, principles of laches likewise do not compel the reversal of summary judgment in this case. For one thing, plaintiff did not raise a laches argument in the trial court. Consequently, we need not reach the issue. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). Moreover, even if the doctrine of laches had been invoked in the summary judgment motion arguments, we are unpersuaded that defendants' delay in moving for dismissal was so egregious to be considered "inexcusable." *See* Knorr v. Smeal, 178 N.J. 169, 180-81, 836 A.2d 794 (2003) (applying principles of laches in a lawsuit involving private litigants, where a defendant had engaged in "inexcusable and unexplained delay" in asserting its rights "to the prejudice of the other party").

We share Judge Weisberg's pointed concern that defendants waited for over a year after filing their answer before they moved to dismiss **[*10]** the complaint under N.J.S.A. 59:8-8. During that eighteen-month time frame, defendants essentially wasted the time and resources of plaintiff, his counsel, and the court, which conducted one or more case management conferences in the matter. Plaintiff was forced to appear for a deposition and for multiple medical examinations. Even so, plaintiff had already been unambiguously alerted several times — by Kurtz's communications and by defendants' answer — that his belated claim was not going to be approved by defendants' joint insurance fund and paid.

Although we disapprove of the lackadaisical manner in which the defense in this case held off on filing its meritorious dispositive motion, we are unpersuaded that the Supreme Court or the Legislature would want the

statute's mandatory notice provisions brushed aside in these circumstances. *See, e.g., D.D., supra, 213 N.J. at 157* (declining to "permit wide latitude to claimants and [their] counsel to circumvent the statute's clear commands"). Indeed, *Knorr*, the leading case on laches relied upon by plaintiff, was a malpractice action against a private physician that did not involve public entity defendants and did not implicate the TCA's strong immunity-based policies. *See Knorr, supra, 178 N.J. at 174-81*.

We note **[*11]** in this regard that plaintiff has not argued that defendants should have been sanctioned in some other manner for dragging him through needless discovery. Hence, we do not reach the hypothetical question of whether other sanctions might have been available to the trial court under the Rules of Court to discourage and address such conduct.

Based upon the applicable law and the undisputed failure of plaintiff to serve a timely notice of claim, the order granting summary judgment is affirmed.[3]

End of Document

[3] Given this result, we do not address defendants' argument that plaintiff acted with unclean hands in continuing with this lawsuit after being advised that no timely claim notice had ever been served.