**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| SALVATORE CAPUTO, *et al.*, | HONORABLE KAREN M. WILLIAMS |
| *Plaintiffs*, | Civil Action No. 24-7723 (KMW-SAK) |
| v. | |
| Cherry Hill Township, | **OPINION** |
| *Defendant.* | |

APPEARANCES:

Patrick T. Krenicky, Esq.
Robert D. Sokolove, Esq.
WEIR LLP
1339 Chestnut Street
Suite 500
Philadelphia, PA 19107

    *Counsel for Plaintiffs*


William F. Cook, Esq.
Joseph T. Carney, Esq.
BROWN & CONNERY
360 Haddon Avenue
Westmont, NJ 08108

    *Counsel for Defendant*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

This matter is before the Court by way of Defendant Cherry Hill Township's ("Defendant") Motion for Partial Summary Judgment (Dkt. No. 24); Plaintiffs Salvatore Caputo and Jacqueline Caputo, Miguel Rivera, Thanh Bui, Hoa Nguyen, Abraham Ortiz, Christina Morales, Mark and Heather Barber, and Jason and Tiffany Hoffman's (collectively, "Plaintiffs") Opposition thereto (Dkt. No. 27); and Defendant's Reply (Dkt. No. 31). The Court has considered the Parties' submissions without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons that follow, Defendant's Motion for Partial Summary Judgment is **GRANTED**.

## II. BACKGROUND

The facts of this case are predominantly undisputed. Each Plaintiff owns and resides at respective properties in Cherry Hill: Salvatore and Jacqueline Caputo since March 2006; Miguel Rivera since August 2020; Thanh Bui and Hoa Nguyen since August 1999; Abraham Ortiz and Christina Morales since September 2018; Mark and Heather Barber since April 1999; and Jason and Tiffany Hoffman since May 2011. (Defendant's Statement of Undisputed Material Facts ("SUMF") ¶¶ 1-6.) Defendant is a public entity organized and existing under the laws of the State of New Jersey. (*Id.* ¶ 7.)

Plaintiffs allege that there have been "numerous flood events which have occurred over many years . . . with significant flood events occurring in 2023 and 2024." (*Id.* ¶ 10 (quoting Compl. ¶¶ 15-16).) Plaintiffs assert that their respective properties have sustained damage as a result of flooding caused by Defendant's deficient stormwater management system. (*Id.* ¶ 11.) Defendant states that Plaintiffs did not notify it of their potential claims arising from the alleged flood damage. (*Id.* ¶ 13.) This is the sole fact that Plaintiffs dispute, claiming that each Plaintiff

notified Defendant "themselves or through their neighbors that they had suffered property damage as a result of flooding caused by [Defendant]." (Plaintiffs' Response to SUMF ("RSUMF") ¶ 13.)

To support this contention, Plaintiffs cite to their respective Answers to Interrogatories and a February 11, 2020 article in "The Sun Newspapers" indicating that Defendant was aware of the flooding as early as 2014. (*Id.* (citing Declaration of Patrick T. Krenicky, Esq. ("Krenicky Decl."), Exs. A-E).) Mr. and Mrs. Caputos' Answers to Interrogatories allege that, "[i]n addition to generally speaking with others relating to flooding issues at their property," they spoke with the Township's Director of Community Development in 2014, who informed them that nothing could be done because it was cost prohibitive. (Krenicky Decl., Ex. A ¶ 5.) Mr. and Mrs. Caputo also claim they spoke to several other town officials, including the mayor, at various times in 2019 and 2023 regarding the flooding. (*Id.*)

Mr. and Mrs. Barber assert in their Answers to Interrogatories that, "[i]n addition to generally speaking with others relating to flooding issues at their property," they "emailed the Mayor's [O]ffice on a few occasions including on July 4, 2023 . . . regarding the flooding." (*Id.*, Ex. B ¶ 5.) The mayor allegedly responded that someone from her office would reach out to set up a meeting, but the meeting never occurred. (*Id.*) Mr. and Mrs. Hoffman allege that they spoke with an individual named "Brian Bauerle" who stated he would like to come to their property to see the effects of the flooding himself. (*Id.*, Ex. C ¶ 5.) The Hoffmans claim that Bauerle came to their property with township engineers and representatives of the mayor and observed the water lines on concrete blocks inside their garage from flooding. (*Id.*) Ms. Morales and Mr. Ortiz allege that, "[i]n addition to generally speaking with others relating to flooding issues at their property," they spoke to Mayor Cahn regarding the flooding." (*Id.*, Ex. D ¶ 5.)

3

Plaintiffs do not cite to any portion of the record suggesting that they notified Defendant of their potential tort claims relating to the flood damage, their belief that Defendant was liable for damages because of those claims, the precise amount of damages claimed, and the specific identities and addresses of the specific individuals who contemplated such claims against Defendant. (*See generally* RUMF.) Nonetheless, Plaintiffs state in their Supplemental Statement of Disputed Material Facts ("SSDMF") that Defendant sent a letter to each Plaintiff "acknowledging that the Properties had been subject to frequent flooding due to impacts on the local stormwater management systems." (SSDMF ¶ 14.) According to Plaintiffs, the letters established that Defendant "had all information that is to be provided in a Tort Claim Notice prior to this lawsuit." (*Id.* ¶ 18.)

Plaintiffs commenced this litigation on July 2, 2024, in the Superior Court of New Jersey, Law Division, Camden County. (SUMF ¶ 8; *see* Dkt. No. 1.) Plaintiffs' Complaint contains four Counts against Defendant: Count I – Negligence/Dangerous Condition; Count II – Nuisance; Count III – Trespass; and Count IV – Inverse Condemnation in violation of the Fifth Amendment of the United States Constitution and 42 U.S.C. §1983. (SUMF ¶ 12 (citing Compl. ¶¶ 24-49).) Defendant timely removed the action to this Court on July 12, 2024. (*See* Dkt. No. 1.) Plaintiffs did not seek leave before the state court, nor this Court, to file a late notice of tort claim in connection with their causes of action arising from the alleged flood damage. (SUMF ¶ 14.)

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir.

2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Quincy Mut. Fire Ins. Co. v. Scripto USA*, 573 F. Supp. 2d 875, 878 (D.N.J. 2008) (quoting *Liberty Lobby*, 477 U.S. at 250).

## IV.   DISCUSSION

When the New Jersey Legislature effected a limited waiver of sovereign immunity by enacting the Tort Claims Act ("TCA"), it declared "to be the public policy of [New Jersey] that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein." *H.C. Equities, LP v. Cnty. of Union*, 247 N.J. 366, 381 (2021) (quoting N.J.S.A. 59:1-2). The TCA's guiding principle is that "immunity from tort liability is the general rule and liability is the exception." *Id.* (quoting *D.D. v. Univ. of Med. & Dentistry of N.J.*, 213 N.J. 130, 133-34 (2013)). The TCA expressly bars any action against a public entity or employee "unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8-3(a). The TCA requires that a notice of tort claim include:

> (a) The name and post office address of the claimant;
>
> (b) The post-office address to which the person presenting the claim desires notices to be sent;
>
> (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
>
> (d) A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;
>
> (e) The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and
>
> (f) The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

N.J.S.A. 59:8-4.

The TCA "imposes a strict time limit for the filing of a notice of claim." *H.C. Equities, LP*, 247 N.J. at 382. "A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the 90th day after accrual of the cause of action." N.J.S.A. 59:8-8. For purposes of the TCA, "a claim accrues on the date on which the underlying tortious act occurred." *Ben Elazar v. Macrietta Cleaners, Inc.*, 230 N.J. 123, 134 (2017); *see Beauchamp v. Amedio*, 164 N.J. 111, 116 (2000) (citing Harry A. Margolis & Robert Novack, *Claims Against Public Entities*, 1972 Task Force cmt. on N.J.S.A. 59:8-1). By operation of the discovery rule, however, the accrual date is tolled "from the date of the tortious act or injury when the injured party either does not know of his injury or does not know that a third party is responsible for the injury." *Ben Elazar*, 230 N.J. at 134.

A claimant must wait six months from "the date notice of claim is received" to "file suit in an appropriate court of law." N.J.S.A. 59:8-8. The TCA states:

> The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S.A. 59:8-9; or
>
> b. Two years have elapsed since the accrual of the claim; or
>
> c. The claimant or the claimant's authorized representative entered into a settlement agreement with respect to the claim.

N.J.S.A. 59:8-8.

To ameliorate the consequences of late filing, the TCA affords a court discretion to permit a claimant who has missed N.J.S.A. 59:8-8's strict ninety-day deadline to file a late notice of tort claim "at any time *within one year after the accrual* of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." N.J.S.A. 59:8-9 (emphasis

7

added). Upon the expiration of that one-year period, however, "the court is without authority to relieve a plaintiff from his failure to have filed a notice of claim, and a consequent action at law must fail." *Rogers v. Cape May Cnty. Off. of Pub. Def.*, 208 N.J. 414, 427 (2011) (quoting *Pilonero v. Township of Old Bridge*, 236 N.J. Super. 529, 532 (App. Div. 1989)).

The substantial compliance doctrine "operates 'to prevent barring legitimate claims due to technical defects.'" *County of Hudson v. Dep't of Corr.*, 208 N.J. 1, 21 (2011) (quoting *Lebron v. Sanchez*, 407 N.J. Super. 204, 215 (App. Div. 2009)). When deciding a substantial compliance claim, courts consider the following factors: (1) "the lack of prejudice to the defending party"; (2) the "series of steps taken to comply with the statute involved"; (3) "general compliance with the purpose of the statute"; (4) "reasonable notice of petitioner's claim"; and (5) "a reasonable explanation why there was not a strict compliance with the statute." *H.C. Equities, LP*, 247 N.J. at 386. In TCA cases, the doctrine of substantial compliance "has been limited carefully to those situations in which the notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." *Id.*

The New Jersey Supreme Court has held that claims against a public entity for dangerous condition, trespass, and nuisance are governed by the TCA and its notice requirements. *See Russo Farms, Inc. v. Vineland Bd. of Educ.*, 144 N.J. 84, 97-98 (1996) (citing N.J.S.A. 59:4-2); *see also Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes*, 90 N.J. 582, 593, 596 (1982). In *Russo*, the Court held that for purposes of the TCA, claims against a municipality for repeated flooding resulting from poor drainage constituted a new tort with each new injury. *Russo Farms, Inc.*, 144 N.J. at 99-101. "That new tort is an 'alleged present failure' to remove the nuisance, and '[s]ince this failure occurs each day that [defendant] does not act, the [defendant's] alleged tortious inaction constitutes a continuous nuisance for which a cause of action accrues anew each day.'"

*Id.* at 99. "Essentially, courts in [such] cases impose a duty on the defendant to remove the nuisance." *Id.* The Court held that, "[a]s a result, each new injury suffered by plaintiffs was a new tort because each contained every element of a tort, including a new breach of duty" to remedy the flooding. *Id.* at 104. Thus, the Court barred the plaintiffs' claims except for those that accrued from flooding events within ninety days prior to their notice of tort claim.[1] *Id.* at 107.

Here, Plaintiffs' claims for dangerous condition, nuisance, and trespass against Defendant based on flooding arising from alleged poor drainage management systems are subject to the TCA's 90-day tort claim notice provisions. *See* N.J.S.A. 59:8-8; *Russo Farms, Inc.*, 144 N.J. at 99-101, 107. For TCA purposes, each specific instance of flood damage constituted a present breach of duty to remove the nuisance, giving rise to a new injury and thus a new tort claim that had to be filed within ninety days of its accrual. *See Russo Farms, Inc.*, 144 N.J. at 99-101, 107. Thus, the Court must determine whether Plaintiffs complied with the TCA's notice of claim requirements. *See* N.J.S.A. 59:8-8. The undisputed facts demonstrates that Plaintiffs did not.

Plaintiffs cite to no evidence in the record demonstrating that any one of them provided Defendant with a notice of tort claim as defined by N.J.S.A. 59:8-4. Nothing in the record demonstrates that any Plaintiff submitted a notice which includes the name and post-office address of the "claimant," the address to which the person "presenting the claim desires notices to be sent," the circumstances "which give rise to the claim," the names of the public entity, employee, or employees alleged to cause the injury, or the "amount claimed," including "the estimated amount of any prospective injury, damage, or loss . . . together with the basis of computation of the amount claimed." N.J.S.A. 59:8-4; *(see generally* RSUMF; SSDMF.)

---

[1] The "continuing nuisance" doctrine "is not an exception that permits evasion of the statute of limitations, but rather an 'accrual' test that allows claims to the extent that they have accrued within the limitations period. *Russo Farms, Inc*, 144 N.J. at 105.

9

Plaintiffs insist that they substantially complied with the TCA, even if they did not meet the requirements of N.J.S.A. 59:8-4, because Defendant knew their properties were damaged by flooding. (Pls.' Opp. Br. at 7-9.) Substantial compliance applies to *timely, written* notices of tort claims that contain technical deficiencies. *See H.C. Equities, LP*, 247 N.J. at 386. Here, Plaintiffs have never even attempted to file anything resembling a notice of tort claim. *See id.* Nor do Plaintiffs provide "a reasonable explanation why there was not a strict compliance with the statute." *Id.* Tellingly, Plaintiffs cite to no authority supporting their contention that a notice of tort claim is not required where a municipality is merely aware of flood damage, regardless of whether the injured party has attempted to provide notice to the public entity of a potential claim against it. Because Plaintiffs have taken no steps to comply with the TCA, have not generally complied with its notice provision, and provided no notice whatsoever to Defendant in advance of filing this lawsuit, the Court finds that Plaintiffs have not substantially complied with the TCA.[2] *See H.C. Equities, LP*, 247 N.J. at 386; *County of Hudson*, 208 N.J. at 21; *Lebron*, 407 N.J. Super. at 215.

In sum, the Court finds that Plaintiffs have not complied with the TCA by filing a notice of tort claim within ninety days of the accrual of dangerous condition, trespass, or nuisance claims arising from flooding. Nor have Plaintiffs sought judicial leave to file a late notice of claim within one year of this action's commencement on July 2, 2024. *See* N.J.S.A. 59:8-9. Because the specific flooding events at issue in this litigation occurred prior to July 2, 2024, and Plaintiffs have not complied with the notice requirements of the TCA, those claims are barred by the TCA and sovereign immunity.[3]

---

[2] The Court furthers notes that Plaintiffs' failure has prejudiced Defendant's ability to prepare a defense, inform Defendant of its potential indebtedness, and timely settle any of Plaintiffs' meritorious tort claims, which is the purpose of the TCA's notice requirement. *See H.C. Equities, LP*, 247 N.J. at 383-84.

[3] Plaintiffs may still file a notice of tort claim for any future dangerous condition, nuisance, or trespass claims arising from flood damage within ninety days of their accrual.

Accordingly, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment.

### V.     CONCLUSION

For all the foregoing reasons, Defendant's Motion for Partial Summary Judgment is **GRANTED**. The Court shall enter an Order consistent with this Opinion.

Dated: September 22, 2025

                                                     KAREN M. WILLIAMS
                                                     UNITED STATES DISTRICT JUDGE